Benjamin Heikali (SBN 307466)
E-mail: bheikali@faruqilaw.com
Joshua Nassir (SBN 318344)
E-mail: jnassir@faruqilaw.com
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

*Attorneys for Plaintiff Joshua Joseph*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA JOSEPH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | Case No.: 2:17-cv-8735 FMO (KSx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date: May 24, 2018<br>Time:  10:00 a.m.<br>Courtroom:  6D<br>Judge:  Hon. Fernando M. Olguin<br><br>Complaint filed: December 4, 2017 |

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................... 1

II. STATEMENT OF FACTS ........................................................................ 1

III. LEGAL STANDARD ............................................................................... 2

IV. ARGUMENT ............................................................................................. 3

    A.  Plaintiff Adequately Pleads Violations Of The CLRA, UCL, And FAL ................................................................................. 3

        1.  The 100% Oil Representations Are False And Misleading .............. 3

        2.  Defendant's Arguments Regarding How Consumers Interpret The 100% Oil Representations are Unavailing .................................. 6

        3.  Defendant's Arguments Regarding How Consumers Perceive The Functioning Of The Products Are Groundless .......................... 9

    B.  Plaintiff Can Seek Equitable Relief ........................................... 10

    C.  The Economic Loss Doctrine Does Not Bar Plaintiff's Negligent Misrepresentation Claim ............................................................ 12

    D.  Plaintiff States A Claim Under The UCL "Unfair" Prong .................... 13

    E.  Plaintiff States A Claim Under The UCL "Unlawful" Prong ................ 15

    F.  Plaintiff's Express Warranty Claim Survives ......................................... 18

    G.  Plaintiff's Implied Warranty Claim Survives ........................................ 19

    H.  Defendant's Request To Strike The Nationwide Allegations Is Procedurally Premature ............................................................... 20

    I.  Plaintiff's Nationwide Allegations Are Meritorious ............................. 22

    J.  Plaintiff's Claims Are Pleaded in Compliance with Rule 9(b) .............. 23

    K.  Plaintiff's Intentional Misrepresentations and Negligent Misrepresentations Claims Are Adequately Pleaded ............................. 23

    L.  Plaintiff Has Adequately Alleged A Claim For Unjust Enrichment ...... 24

i

V.    CONCLUSION ................................................................................................25

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
   275 F. Supp. 3d 910 (N.D. Ill. 2017) .................................................. 7, 8

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
   No. MDL 13-2438 PSG,
   2014 U.S. Dist. LEXIS 149732 (C.D. Cal. Sept. 4, 2014) ...................................... 15

*Aberin v. Am. Honda Motor Co.*,
   No. 16-cv-04384-JST,
   2018 U.S. Dist. LEXIS 49731 (N.D. Cal. Mar. 26, 2018) ...................................... 11

*Allred v. Frito-Lay N. Am., Inc.*,
   No. 17-CV-1345 JLS (BGS),
   2018 U.S. Dist. LEXIS 37617 (S.D. Cal. Mar. 7, 2018) ................................... 14, 19

*Arabian v. Organic Candy Factory*,
   No. 2:17-cv-05410-ODW-PLA,
   2018 U.S. Dist. LEXIS 45833 (C.D. Cal. Mar. 19, 2018) ...................................... 13

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) .................................................................. 25

*Balser v. Hain Celestial Grp., Inc.*,
   640 F. App'x 694 (9th Cir. 2016) ............................................................ 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................... 3

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*,
   104 Cal. App. 4th 508 (2002) .............................................................. 16

*Bohac v. Gen. Mills, Inc.*,
   No. 12-cv-05280-WHO,
   2014 U.S. Dist. LEXIS 41454 (N.D. Cal. Mar. 26, 2014) ...................................... 5

*Broomfield v. Craft Brew Alliance, Inc.*,
   No. 17-cv-01027-BLF,
   2017 U.S. Dist. LEXIS 142572 (N.D. Cal. Sept. 1, 2017) ................................. 13, 25

*Brown v. Alexander*,
  No. CV 13-6143-BRO (RNB),
  2014 U.S. Dist. LEXIS 110009 (C.D. Cal. June 24, 2014)......................................3

*Brown v. Hain Celestial Grp., Inc.*,
  913 F. Supp. 2d 881 (N.D. Cal. 2012)...................................................................18

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011)...........................................................................22

*Campen v. Frito-Lay N. Am., Inc.*,
  No. 12-1586 SC, 2013 U.S. Dist. LEXIS 47126 (N.D. Cal. Apr. 1, 2013) ............4

*Chapman v. Skype Inc.*,
  220 Cal. App. 4th 217 (2013) .................................................................................3

*Chavez v. Blue Sky Natural Beverage Co.*,
  No. C 06-06609 JSW,
  2011 U.S. Dist. LEXIS 109738 (N.D. Cal. Sept. 27, 2011)...................................4

*Clancy v. The Bromley Tea Co.*,
  308 F.R.D. 564 (N.D. Cal. 2013) ..........................................................................21

*Clark v. LG Elecs. U.S.A., Inc.*,
  No. 13-cv-485 JM (JMA),
  2013 U.S. Dist. LEXIS 155179 (S.D. Cal. Oct. 29, 2013)...................................20

*In re Clorox Consumer Litig.*,
  894 F. Supp. 2d 1224 (N.D. Cal. 2012).......................................................4, 21, 22

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016)...................................................................25

*David v. Baker*,
  129 F. App'x 358 (9th. Cir. 2005) ...........................................................................2

*Davidson v. Kimberly-Clark Corp.*,
  873 F.3d 1103 (9th Cir. 2017) ...............................................................................11

*Dei Rossi v. Whirlpool Corp.*,
  No. 2:12-cv-00125, 2013 U.S. Dist. LEXIS 153682 (E.D. Cal. Oct. 24, 2013)....14

*Dorfman v. Nutramax Labs., Inc.*,
   No. 13cv0873 WQH (RBB),
   2013 U.S. Dist. LEXIS 136949 (S.D. Cal. Sept. 23, 2013) ................................. 14

*Estakhrian v. Obenstine*,
   233 F. Supp. 3d 824 (C.D. Cal. 2017) ................................................... 11

*Evans v. DSW, Inc.*,
   No. CV 16-3791 JGB,
   2017 U.S. Dist. LEXIS 216614 (C.D. Cal. Sept. 14, 2017) ........................... 11, 12

*Fagan v. Neutrogena Corp.*,
   No. 5:13-cv-01316-SVW-OP,
   2014 U.S. Dist. LEXIS 2795 (C.D. Cal. Jan. 8, 2014) ................................... *passim*

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............................................... 21, 22

*Gasser v. Kiss My Face, LLC*,
   No. 17-cv-01675-JSC,
   2017 U.S. Dist. LEXIS 175273 (N.D. Cal. Oct. 23, 2017) .................................. 4

*Gerstle v. Am. Honda Motor Co.*,
   No. 16-cv-04384-JST,
   2017 U.S. Dist. LEXIS 100580 (N.D. Cal. June 28, 2017) ................................. 21

*Gilbert Fin. Corp. v. Steelform Contracting Co.*,
   145 Cal. Rptr. 448 (Ct. App. 1978) .................................................... 19

*Gregorio v. Clorox Co.*,
   No. 17-cv-03824-PJH,
   2018 U.S. Dist. LEXIS 19542 (N.D. Cal. Feb. 6, 2018) ............................... 10, 13

*Hammock v. Nutramarks, Inc.*,
   No. 15cv2056 BTM (NLS),
   2016 U.S. Dist. LEXIS 124240 (S.D. Cal. Sept. 12, 2016) ................................ 20

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ................................................... 24

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
   No. C17-541 RSM,
   2017 U.S. Dist. LEXIS 122810 (W.D. Wash. Aug. 3, 2017) ................................. 9

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Jones v. Conagra Foods, Inc.*,
  912 F. Supp. 2d 889 (N.D. Cal. 2012)...................................................... 17

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) .................................................................................... 8

*Konik v. Time Warner Cable*,
  No. CV 07-763 SVW,
  2009 U.S. Dist. LEXIS 138618 (C.D. Cal. Dec. 2, 2009)...................... 10

*Korolshteyn v. Costco Wholesale Corp.*,
  No. 3:15-cv-709-CAB-RBB,
  2017 U.S. Dist. LEXIS 135303 (S.D. Cal. Aug. 23, 2017)...................... 4

*Langan v. Johnson & Johnson Consumer Cos.*,
  95 F. Supp. 3d 284 (D. Conn. 2015) ................................................ 6, 7

*Letizia v. Facebook Inc.*,
  267 F. Supp. 3d 1235 (N.D. Cal. 2017)................................................... 13

*Lynch v. Tropicana Prods.*,
  No. 2:11-cv-07382 (DMC) (JAD),
  2013 U.S. Dist. LEXIS 82829 (D.N.J. June 12, 2013)........................... 10

*MacDonald v. Ford Motor Co.*,
  37 F. Supp. 3d 1087 (N.D. Cal. 2014)............................................ 15, 16

*Maynard v. Bonta*,
  No. CV 02-06539 MMM,
  2002 U.S. Dist. LEXIS 26728 (C.D. Cal. Nov. 18, 2002) ..................... 22

*Mazza v. Am. Honda Motor Co.*,
  666 F3d 581 (9th Cir. 2012) .................................................................21, 22

*McKell v. Wash. Mut.*, Inc.,
  142 Cal. App. 4th 1457, 1473 (2006) .................................................... 14

*Michael v. Honest Co.*,
  No. LA CV15-07059 JAK (AGRx),
  2016 U.S. Dist. LEXIS 189116 (C.D. Cal. Dec. 6, 2016)...................... 19

*Morales v. Unilever U.S., Inc.*,
  No. 2:13-2213 WBS EFB,
  2014 U.S. Dist. LEXIS 49336 (E.D. Cal. Apr. 9, 2014) ....................... 10

*Munning v. Gap, Inc.*,
  238 F. Supp. 3d 1195 (N.D. Cal. 2017) .................................................... 12

*Nguyen v. Nissan N. Am., Inc.*,
  No. 16-CV-05591-LHK,
  2017 U.S. Dist. LEXIS 55501 (N.D. Cal. Apr. 11, 2017) ...................................... 12

*Pecanha v. Hain Celestial Grp.*,
  No. 17-cv-04517-EMC,
  2018 U.S. Dist. LEXIS 11739 (N.D. Cal. Jan. 24, 2018) ........................................ 7

*Perryman v. Litton Loan Servicing, LP*,
  81 F. Supp. 3d 893 (N.D. Cal. 2015) ........................................................ 13

*POM Wonderful LLC v. Purely Juice, Inc.*,
  No CV-07-02633, 2008 U.S. Dist. LEXIS 55426 (C.D. Cal. July 17, 2008) .......... 4

*Precht v. Kia Motors Am., Inc.*,
  No. SA CV 14-1148-DOC,
  2014 U.S. Dist. LEXIS 185202 (C.D. Cal. Dec. 29, 2014) ................................... 20

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ........................................................... 8, 23

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
  768 F.3d 938 (9th Cir. 2014) .............................................................. 3

*Roberts v. Electrolux Home Prods., Inc.*,
  No. CV 12-1644 CAS,
  2013 U.S. Dist. LEXIS 185488 (C.D. Cal. Mar. 4, 2013) ................................... 20

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) .................................................................. 13

*Safransky v. Fossil Grp., Inc.*,
  No. 17cv1865-MMA (NLS),
  2018 U.S. Dist. LEXIS 60946 (S.D. Cal. Apr. 9, 2018) ..................................... 11

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
  No. CV 15-8629 FMO (EX), 2016 WL 7486600 (C.D. Cal. Sept. 27, 2016) ....... 12

*Singleton v. Fifth Generation, Inc.*,
  No. 5:15-CV-474, 2016 U.S. Dist. LEXIS 14000 (N.D.N.Y. Jan. 12, 2016) ........ 24

*Square 1 Bank v. Lo*,
    128 F. Supp. 3d 1257 (N.D. Cal. 2015) ................................................................ 2

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ................................................................................. 3

*Tapia v. Davol, Inc.*,
    116 F. Supp. 3d 1149 (S.D. Cal. 2015) ............................................................. 20

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................... 23

*Walters v. Vitamin Shoppe Indus.*,
    701 F. App'x 667 (9th Cir. 2017) ......................................................................... 8

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-CV-02724-LHK,
    2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) .................................. 21

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................... 3, 4, 7, 23

*Wolph v. Acer Am. Corp.*,
    No. C 09-01314 JSW,
    2009 U.S. Dist. LEXIS 83681 (N.D. Cal. Sept. 14, 2009) ................................ 20

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) ................................................................................ 3

*Zakaria v. Gerber Prods. Co.*,
    No. LA CV15-00200,
    2015 U.S. Dist. LEXIS 80428 (C.D. Cal. June 18, 2015) ................................. 12

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) ....................................................................... 17, 21

**Statutes**

21 U.S.C. § 343(i) ..................................................................................... 16, 17

Cal. Comm. Code § 2313(1) ................................................................................. 18

Cal. Comm. Code § 10215 .................................................................................... 19

**Other Authorities**

21 C.F.R. 102.5(a) ............................................................................................ 16

21 C.F.R. § 101.4(a)(1) ................................................................................ 2, 16

21 C.F.R. § 101.18(b) ........................................................................................ 5

21 C.F.R. § 102.5(a) ........................................................................................ 16

21 C.F.R. § 184.1165(c) .................................................................................. 17

21 C.F.R. § 184.1655(c) .................................................................................. 17

Fed. R. Civ. P. 8(a)(3) ...................................................................................... 25

## I.   INTRODUCTION

Defendant boasts that its cooking sprays are "100%" oil, indicating that the products are composed entirely of oil and nothing more. Indeed, it would be highly *implausible* for a consumer to believe that products contain anything but oil. Nonetheless, the products contain additional ingredients: soy lecithin, dimethyl silicone, propane and isobutane. The presence of any one of these ingredients in the products renders the labels false and misleading. In its Motion to Dismiss ("Motion"), Defendant now argues that no reasonable consumer would think that the products are composed entirely of oil because the "100%" qualifies only the oil contained therein, rather than the entire product. However, Defendant never disclaims that only the oil contained in the products is 100% canola or 100% olive oil. As further demonstrated below, Plaintiff's and other consumers' interpretation that entire product is comprised of only oil is entirely reasonable. For these reasons, Defendant's Motion should be denied.

## II.   STATEMENT OF FACTS

This class action challenges Defendant The J.M. Smucker Company's ("Defendant") false and misleading labeling and marketing of its Crisco® 100% Extra Virgin Olive Oil No-Stick Spray and Crisco® 100% Canola Oil Original No-Stick Spray (the "Product(s)"). Class Action Complaint ("CAC") ¶ 1. Specifically, Defendant represents that the Products are composed of only a single ingredient – canola oil or extra virgin olive oil – despite the Products also containing soy lecithin, dimethyl silicone, propane and isobutane. *Id.* at ¶¶ 15-16. Therefore, the Products are falsely and deceptively advertised. *Id.* at ¶ 20.

In reliance on the "100% Extra Virgin Olive Oil" and "100% Canola Oil" representations on the labels (collectively, the "100% Oil representation(s)"), Plaintiff Joshua Joseph ("Plaintiff") and other consumers purchased the Products believing that the Products contain only a single ingredient – oil. *Id.* at ¶ 38. In purchasing the

Product, Plaintiff did not look at the Nutrition Facts to ascertain what other ingredients would be in the Product because he relied on the 100% Oil representation on the front of the Product. *Id.* at ¶ 21. Had he known that the Products were not 100% Oil, as represented, he would not have purchased them, or would have paid significantly less for them. *Id.* at ¶ 39. Therefore, Plaintiff and members of the Classes have been deceived by Defendant's representations and have suffered injury in fact as a result of Defendant's improper and deceptive practices. *Id.*

Plaintiff also alleges that competing brands of cooking sprays claiming to be 100% oil are produced without the use of additional ingredients. *Id.* at ¶ 37. For example, the Winona Pure brand "100% Canola Oil" spray contains solely oil as an ingredient. *Id.*[1]

Furthermore, Plaintiff alleges that Defendant's use of the term "Propellant" on the Products' Nutrition Facts is in violation of applicable federal regulations and therefore violates the unlawful prong of the California Unfair Competition law ("UCL"). *Id.* at ¶¶ 22-36, 74. Specifically, Defendant admits that the "Propellant" used in its Products is actually propane and isobutane, but fails to disclose these names by their common or usual name under the relevant federal regulation. *See* 21 C.F.R. § 101.4(a)(1). CAC at ¶ 36.

## III.   LEGAL STANDARD

On a motion to dismiss, it is the defendant's burden to show that the plaintiff cannot state a claim for relief. *Square 1 Bank v. Lo*, 128 F. Supp. 3d 1257, 1265 (N.D. Cal. 2015); *David v. Baker*, 129 F. App'x 358, 360 (9th. Cir. 2005). In evaluating a motion to dismiss, all factual uncertainties in the complaint must be construed in the

---

[1] In its Motion, Defendant inaccurately notes that "Plaintiff relies on the ingredient list" "rather than relying on the '100% Canola Oil' label on the front of Plaintiff's example of a competing spray…" Motion at 3 n. 2. To be clear, Plaintiff included an image of the ingredient list for the Winona Pure brand "100% Canola Oil" spray in his CAC as evidence in support of his allegation that competing brands can and are produced without additional ingredients. Plaintiff did not allege to have purchased the Winona Pure brand "100% Canola Oil" spray, nor has he alleged any reliance on any part of that product label.

light most favorable to the plaintiff. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). The Court should "draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). To survive a motion to dismiss, Plaintiff must only allege enough facts to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In recognition of the foregoing principles, courts in this jurisdiction have held that "on a motion to dismiss, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Brown v. Alexander*, No. CV 13-6143-BRO (RNB), 2014 U.S. Dist. LEXIS 110009, at *6-7 (C.D. Cal. June 24, 2014) (citation omitted). The Court should only dismiss claims for which it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

## IV.     ARGUMENT

### A.     Plaintiff Adequately Pleads Violations Of The CLRA, UCL, And FAL

#### 1.     The 100% Oil Representations Are False And Misleading

Courts apply the reasonable consumer standard to determine whether a representation is deceptive under the CLRA, FAL, and UCL. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under this standard, Plaintiff need only show that members of the public are "'likely to be deceived'" by a representation. *Id.* (citation omitted). "[A] reasonable consumer [] is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is the ordinary consumer within the target population.") *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013) (internal citations and internal quotation marks omitted). Further, the "reasonable consumer" threshold is low on a motion to dismiss. Only in a "rare situation" is dismissal of California false advertising claims appropriate.

*Williams*, 552 F.3d at 939. Rather, dismissal is only appropriate if "it [is] ***impossible*** for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id*. (emphasis added).

This is a textbook case of deceptive advertising. Defendant places the "100% Extra Virgin Olive Oil" or "100% Canola Oil" representations on its Product labels, indicating that the Products are composed entirely of oil. Therefore, an interpretation that the Products are composed solely of oil is very reasonable. *See POM Wonderful LLC v. Purely Juice, Inc*., No CV-07-02633, 2008 U.S. Dist. LEXIS 55426, at *33 (C.D. Cal. July 17, 2008) (holding that the phrase "100% pomegranate" on a juice product was literally false and likely to deceive consumers when the product contained substances other than pomegranate juice);[2] *see also Gasser v. Kiss My Face, LLC*, No. 17-cv-01675-JSC, 2017 U.S. Dist. LEXIS 175273, at *14 (N.D. Cal. Oct. 23, 2017) ("It is now well established in the Ninth Circuit that for purposes of a motion to dismiss a reasonable consumer could understand the statements '100% natural'. . . to mean that a ***product*** does not contain ***any*** non-natural ingredients) (citing *Williams*, 552 F.3d at 938-939); *Campen v. Frito-Lay N. Am., Inc.*, No. 12-1586 SC, 2013 U.S. Dist. LEXIS 47126, at *35-36 (N.D. Cal. Apr. 1, 2013) (holding that "a reasonable consumer could interpret a bag of chips claiming to have been 'Made with ALL NATURAL

---

[2] Plaintiff also alleges that the 100% Oil representations are also false. CAC ¶ 20. When a representation is literally or objectively false, it violates the UCL, FAL, and CLRA. *See Korolshteyn v. Costco Wholesale Corp.*, No. 3:15-cv-709-CAB-RBB, 2017 U.S. Dist. LEXIS 135303, at *14 (S.D. Cal. Aug. 23, 2017) (finding that a plaintiff proves his "false or misleading advertising claim" when he proves that "***a statement is literally false***; or (2) that the statement is literally true, but that it is misleading to a reasonable consumer.") (emphasis added) (citing to *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1231-33 (N.D. Cal. 2012) (sustaining UCL, FAL, and CLRA claims when plaintiff has alleged evidence that directly contradicted defendant's "objectively false" representation). Because Plaintiff has established falsity, consumer deception is presumed. *See Chavez v. Blue Sky Natural Beverage Co.*, No. C 06-06609 JSW, 2011 U.S. Dist. LEXIS 109738, at *17 (N.D. Cal. Sept. 27, 2011) ("[T]he presumption of deception is warranted where the literally false representation is about an inherent quality or characteristic of the product[.]"); *see also Korolshteyn*, 2017 U.S. Dist. LEXIS 135303, at *14 (noting that once a plaintiff establishes that a statement is literally false, he or she has proved a false advertising claim).

Ingredients' to consist exclusively of natural ingredients[.]"). Despite this, the Products also contain soy lecithin, dimethyl silicone, propane and isobutane, making the 100% Oil representations misleading.[3]

Furthermore, Defendant does nothing to dispel this highly plausible common-sense belief. Notably, Defendant does not explicitly disclaim on the Product label or elsewhere that the "100%" descriptor only qualifies the oil itself rather than the entire Product. Nor does Defendant instead represent on the label that the Products are simply "made with 100% Canola Oil, with additional ingredients," a representation that might suggest that Products contain oil ***among other*** ingredients. Further, there is no indication, such as an asterisk or fine print near or around the representations, directing consumers to look elsewhere. *See Bohac v. Gen. Mills, Inc*., No. 12-cv-05280-WHO, 2014 U.S. Dist. LEXIS 41454, at \*27 (N.D. Cal. Mar. 26, 2014) (denying motion to dismiss UCL, FAL, and CLRA claims when, *inter alia*, the products' labels failed to include language disclaiming or qualifying the "100% Natural" representations to indicate that some of the ingredients are not natural). Instead, Defendant now makes the nonsensical argument that a reasonable consumer could only understand that the "100%" qualifies the oil content rather than the entire Product, and that if Plaintiff and other consumers were unclear about the Products' composition, they would check the ingredients' list on the back of the Products. Motion at 7-9. Defendant's arguments are each baseless and addressed in turn below.

---

[3] Furthermore, the FDA has recognized that a product's label may be misleading when it states only the name of one ingredient in the product. *See* 21 C.F.R. § 101.18(b) ("The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling."). To be clear, Plaintiff has not alleged a violation of 21 C.F.R. § 101.18(b) but only cites that regulation as evidence of the FDA's agreement that Defendant's conduct has the capacity to mislead.

## 2.    Defendant's Arguments Regarding How Consumers Interpret The 100% Oil Representations are Unavailing

Defendant first contends that "a reasonable consumer purchasing a no-stick spray product with 100% olive oil or 100% canola oil would understand the 100% qualifies the type of oil in each product and distinguishes them from blended oils." Motion at 7. Defendant's argument is both groundless and premature. As an initial note, Defendant's argument is based on a misapprehension of the allegations. Plaintiff does not allege that the Products contain multiple types of oil. Plaintiff only alleges that based on the plain reading of the 100% Oil representations, he and other consumers reasonably expected the entire product to be comprised solely of oil. As discussed above, a reasonable consumer has no reason to believe those representations qualify anything but the entire Product.

*Langan v. Johnson & Johnson Consumer Cos*., 95 F. Supp. 3d 284 (D. Conn. 2015) is on all fours. In *Langan*, the plaintiff challenged defendant's sunscreen products labeled as "100% naturally-sourced sunscreen ingredients" when they contained synthetic ingredients. *Id.* at 287. Plaintiff alleged that defendant's representation led her to believe that ***all*** the ingredients in the sunscreen products were natural. *Id.* In its motion to dismiss, the defendant contended that the representation is literally true and implies that only the sun-screening ingredients in the products were natural. *Id.* at 289. The defendant also argued that any ambiguity in the meaning would be dispelled by the detailed ingredient list found on the product packaging. *Id.* In rejecting the defendant's argument, the court held that:

> [I]t seems perfectly reasonable to me that a typical consumer might interpret the phrase "100% naturally-sourced sunscreen ingredients" on a sunscreen product label to mean that the whole product was natural. After all, the entire product—everything in the container—is applied by a consumer as a sunscreen, and it seems unlikely that a reasonable consumer would distinguish between the active "sunscreen ingredients" and the "non-sunscreen ingredients" inside a container.

*Id.* (adopting *Fagan v. Neutrogena Corp.,* No. 5:13-cv-01316-SVW-OP, 2014 U.S. Dist. LEXIS 2795, at *4-5 (C.D. Cal. Jan. 8, 2014) (denying motion to dismiss because the defendant's interpretation of the term "100%" as applying only to the ingredients providing protection from the sun "rests on one possible interpretation of the language, but it is not the only possible interpretation.")). The same logic applies here as a typical consumer can very plausibly understand the 100% Oil representations to mean that the whole Product is 100% Oil. The courts in both *Langan* and *Fagan* went on to also hold that that pursuant to *Williams*, even if ambiguity existed in the language of the representation, the ingredient lists did not provide an automatic shield against liability for deception. *Fagan*, 2014 U.S. Dist. LEXIS 2795 at *5; *Langan*, 95 F. Supp. 3d at 290.

Defendant relies heavily on *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910 (N.D. Ill. 2017) ("*Parmesan*") to make its point. However, *Parmesan*, a non-binding out of circuit decision,[4] is the "exception rather than the rule." In *Parmesan*, the defendants' products claimed to be "100% Grated Parmesan Cheese" but contained other ingredients as well. *Id.* at 914. In granting the defendant's motion to dismiss, the court reasoned that when a representation is ambiguous, and consumers interpret it in an unnatural or debatable manner, the consumer is expected to look at the ingredient list for clarification. *Id.* at 922.

However, the court's reasoning is directly inconsistent with Ninth Circuit precedent explicitly holding that a reasonable consumer is ***not*** "expected to look beyond misleading representations on the front of the of the box to discover the truth from the ingredient list[.]" *Williams*, 552 F.3d at 939. *Williams* does not discriminate between degrees of ambiguity in representations. Other Ninth Circuit cases have

---

[4] Indeed, since the recent decision in *Parmesan*, at least one California court has refused to follow *Parmesan,* criticizing the decision as inconsistent with binding California law. *See Pecanha v. Hain Celestial Grp.*, No. 17-cv-04517-EMC, 2018 U.S. Dist. LEXIS 11739, at *12-13 (N.D. Cal. Jan. 24, 2018) (following *Williams* and *Campen*).

followed *Williams'* key holding in circumstances akin to this case. *See, e.g.*, *Reid v. Johnson & Johnson*, 780 F.3d 952, 958-59 (9th Cir. 2015) (citing *Williams* for the proposition that an ingredient list does not "provide a shield for liability for the deception."); *Walters v. Vitamin Shoppe Indus.*, 701 F. App'x 667, 670 (9th Cir. 2017) (following *Williams*, holding that the plaintiff "did not have a duty to validate claims on the front of a product's label by cross-checking them" with the back label); *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016) ("*Williams* is clear that an ingredient list does not correct, as a matter of law, misrepresentations on the product's label. Rather, the likely impact of such a list on a reasonable consumer is a factual issue, not determinable on the pleadings."). *Parmesan* is also directly at odds with on-point California precedent discussed above. *See Fagan*, 2014 U.S. Dist. LEXIS 2795, at *4-5. Ultimately, the court in *Parmesan* inappropriately assumed the role of the fact-finder when it was highly plausible that a consumer could interpret "100% Grated Parmesan Cheese" to mean the products contain only cheese. Therefore, *Parmesan* is inapposite to this case.

Regardless, the 100% Oil representations here are not "ambiguous" and Plaintiff's interpretation of them are not "unnatural." *Parmesan*, 275 F. Supp. 3d at 922. The plain words of the representations, which appear to qualify the entire Product, indicate that each Product is 100% oil and nothing else. There is no ambiguity or unnatural interpretation here necessitating consumers to look elsewhere.

Furthermore, ***even if*** the 100% Oil representations indicated that only the oil itself was 100% canola or olive oil (rather than a blend), California's false advertising statutes bar advertising that is misleading or has the capacity to mislead, even if accurate in some sense. *See Kasky*, 27 Cal. 4th at 951 (holding that "these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'") (citation omitted). Here, the representations are misleading

under Plaintiff's highly plausible understanding. The burden of precise interpretation should not be shouldered by Plaintiff and consumers.

Defendant's interpretation of the 100% Oil representations also defies common sense. By Defendant's logic, they could have called the Product "100% Dimethyl Silicone" because the dimethyl silicone in the product is only dimethyl silicone. No reasonable person would read the 100% Oil representations so strictly.

At the very least, Defendant's arguments are premature. Defendant is asking the Court to go beyond the four corners of the CAC and accept, as a matter of law, its strained interpretation of the 100% Oil representation. Defendant does so without presenting any evidence, either expert or otherwise. Indeed, the question of how consumers interpret phrases such as "100% . . ." or "All . . ." is a factual one for the finder of fact. *See Fagan*, 2014 U.S. Dist. LEXIS 2795 at *6 (holding that how a reasonable consumer interprets the phrase "100% naturally sourced sunscreen ingredients" is not an appropriate question at the dismissal phase and would require "a more developed factual record to establish"); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541 RSM, 2017 U.S. Dist. LEXIS 122810, at *12 (W.D. Wash. Aug. 3, 2017) (finding that "questions of how a reasonable person would interpret 'all' and 'every' . . . remain for the trier of fact to decide."). At this stage, the Court should not accept Defendant's unsupported and self-serving interpretation of the representations.

### 3. Defendant's Arguments Regarding How Consumers Perceive The Functioning Of The Products Are Groundless

Defendant also contends that because the Products are "sprays", a reasonable consumer purportedly must understand that the Products contain propellant to allow the spray to function. Motion at 9. Defendant provides no basis for this conjecture. Plaintiff and other reasonable consumers are not packaging engineers. They are not expected to know the fine intricacies of how certain products function. Simply put, just

because a product is sold in a can does not mean consumers would understand that it contains propellant. *See Gregorio v. Clorox Co.*, No. 17-cv-03824-PJH, 2018 U.S. Dist. LEXIS 19542, at *11-14 (N.D. Cal. Feb. 6, 2018) (rejecting argument that plaintiff's interpretation of "naturally derived" in context of cleaning products defies common sense); *Lynch v. Tropicana Prods.*, No. 2:11-cv-07382 (DMC) (JAD), 2013 U.S. Dist. LEXIS 82829, at *22 (D.N.J. June 12, 2013) (finding no evidence that consumers understand the "intricacies relating to the shelf life and processing of the orange juice" when reading the "100% pure and natural" representation on the label).[5]

The oil in the products may be released with compressed air or some other mechanism, rather than with the aid of an ingredient. Such is likely the case for one of Defendant's competitor cooking spray brands, which is similarly labeled as "100% Canola Oil," but contains only canola oil as an ingredient. *See* CAC ¶ 37.

At the very least, even if consumers are expected to understand that propellant is necessary to extract the oil from the can (which it is not), Defendant cannot account for the other additional ingredients. Consumers would still expect the remainder of the Products to be pure oil. No reasonable consumer could possibly understand that a 100% oil product contains other ingredients such as soy lecithin or dimethyl silicone. For the foregoing reasons, Plaintiff adequately alleges claims under the CLRA, UCL, and FAL.

## B.    Plaintiff Can Seek Equitable Relief

Defendant also argues that Plaintiff's equitable claims for relief are foreclosed because Plaintiff has an adequate remedy at law – money damages. Motion at 10-11. However, monetary damages are ***inadequate*** here as Plaintiff has alleged that injunctive relief is necessary to deter Defendant from continuing its false and deceptive

---

[5] *See also Morales v. Unilever U.S., Inc.*, No. 2:13-2213 WBS EFB, 2014 U.S. Dist. LEXIS 49336, at *23 (E.D. Cal. Apr. 9, 2014) ("Even if defendant were correct that a cosmetic product cannot be 'natural,' it does not follow that labeling cosmetic products as natural is per se not misleading."); *see also Konik v. Time Warner Cable*, No. CV 07-763 SVW (RZx), 2009 U.S. Dist. LEXIS 138618, at *26 n.8 (C.D. Cal. Dec. 2, 2009) ("'The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its powers to deceive others less experienced.'") (citation omitted).

conduct regarding the Products.  CAC ¶ 45. *Estakhrian* is on all fours. In *Estakhrian*, the court rejected the defendant's argument that the plaintiffs "cannot obtain injunctive relief under the UCL because, '[e]ven assuming <u>arguendo</u> Plaintiff could prove every element of any one of their damages claims, they would only be entitled to money relief.'" *Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 845 (C.D. Cal. 2017) (Olguin, J.). The court held that "plaintiffs may seek injunctive and/or restitutionary equitable relief separate and apart from the same underlying claims[.]" *Id.* at 846. In support, the court pointed to the text of the UCL: "[U]nless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state." *Id.* at 845 (quoting California Business & Professions Code § 17205). Other courts have reached the same conclusion. *See Evans v. DSW, Inc*., No. CV 16-3791 JGB (SPx), 2017 U.S. Dist. LEXIS 216614, at *16-17 (C.D. Cal. Sept. 14, 2017) (plaintiff's allegations seeking to cease defendant's continuing deceptive conduct are "sufficient to allege that a damages remedy is inadequate."); *Safransky v. Fossil Grp., Inc*., No. 17cv1865-MMA (NLS), 2018 U.S. Dist. LEXIS 60946, at *41-46 (S.D. Cal. Apr. 9, 2018) (declining to dismiss plaintiff's claims based on equitable relief when plaintiff has alleged that the deception would continue if defendants were not enjoined from continuing their deceptive conduct); *see also Aberin v. Am. Honda Motor Co*., No. 16-cv-04384-JST, 2018 U.S. Dist. LEXIS 49731, at *26-27 (N.D. Cal. Mar. 26, 2018) (finding no bar to the pursuit of alternative remedies at the pleadings stage). The Ninth Circuit recently stressed the importance of equitable relief in consumer cases, reinforcing the notion that monetary relief absent an injunction is insufficient. *See Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017) (agreeing with the principle that "'the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction[.]'") (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009)).

Defendant's case law in support of its position does not establish otherwise. For

example, Defendant argues that because Plaintiff's CLRA and warranty claims rely on the same facts, "the plaintiff has an adequate remedy at law and may not seek equitable remedies." Motion at 10 (citing to *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017)). Defendant in *Evans* also relied on *Munning* and made an identical argument. *Evans*, 2017 U.S. Dist. LEXIS 216614, at *14-15. But the *Evans* court found *Munning* "distinguishable because the court in that case had already dismissed the plaintiff's UCL and FAL claims." *Id.* at *15. Here, Plaintiff's UCL and FAL claims are viable and have not been dismissed. Defendant's remaining authority is equally unavailing.[6]

## C.   The Economic Loss Doctrine Does Not Bar Plaintiff's Negligent Misrepresentation Claim

Defendant contends that the economic loss doctrine ("ELD") bars Plaintiff's negligent misrepresentation claim because Plaintiff does not allege personal injury or property damage. Motion at 12. However, Defendant incorrectly construes California law. The economic loss "rule does not apply to Plaintiff's negligent misrepresentation claim [because] 'California law classifies negligent misrepresentation as a species of fraud . . . for which economic loss is recoverable.'" *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200, 2015 U.S. Dist. LEXIS 80428, at *31 (C.D. Cal. June 18, 2015) (quoting *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 607

---

[6] For example, in *Nguyen*, the plaintiff sought a monetary restitutionary remedy to create a "recovery fund used specifically to pay for a program" where the defendant would repair assembly defects found in the automobile products at issue in the case. *Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2017 U.S. Dist. LEXIS 55501, at *9 (N.D. Cal. Apr. 11, 2017). In denying an injunction requiring the defendant to repair the assembly defects, the court found that plaintiff's legal remedies were adequate because "Plaintiff's allegations simply demonstrate that equitable remedies *exist*." *Id.* at *13-14. The restitutionary repair fund performed the same function as the requested injunction. The automobiles would be fixed. Here, absent a court order the Products' labeling will remain false and misleading. In *Salas*, the court dismissed the plaintiffs' equitable claims because plaintiffs asserted, without any support, that the court may permit plaintiffs' equitable claims to go forward without requiring a showing that the legal remedies are inadequate. *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (EX), 2016 WL 7486600, at *14 (C.D. Cal. Sept. 27, 2016). Because Plaintiff has provided case law in support of his position and has established the inadequacies of monetary relief in this action, *Salas* is inapposite.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   (9th Cir. 2008)); *see also Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th
2   979, 991 & n.7 (2004)).

3        Recent California precedent has rejected the same argument advanced by
4   Defendant here. *See, e.g.*, *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-
5   BLF, 2017 U.S. Dist. LEXIS 142572, at *29-31 (N.D. Cal. Sept. 1, 2017) ("[B]inding
6   Ninth Circuit precedent supports Plaintiffs' position [that the ELD does not bar a claim
7   for negligent misrepresentation]") (citing *Kalitta Air, L.L.C.*); *Gregorio*, 2018 U.S.
8   Dist. LEXIS 19542 at *15-16 (same); *see also Arabian v. Organic Candy Factory*, No.
9   2:17-cv-05410-ODW-PLA, 2018 U.S. Dist. LEXIS 45833, at *17 (C.D. Cal. Mar. 19,
10  2018) (finding that the ELD did not bar plaintiff's negligent misrepresentation claims
11  when he alleged the defendant's misrepresentations of the product's contents induced
12  him to purchase the product). Similarly, the CAC alleges that Defendant fraudulently
13  induced Plaintiff to purchase the Products by affirmatively misrepresenting their
14  contents.    CAC ¶¶ 6, 12, 133.  Accordingly, Plaintiff's claim for negligent
15  misrepresentation is not barred by the ELD.

16       **D.    Plaintiff States A Claim Under The UCL "Unfair" Prong**

17       Plaintiff alleges that Defendant violates the UCL "unfair" prong because
18  "[d]eceiving consumer[s] about the contents of the Products is of no benefit to the
19  consumers" and is far outweighed by the injury and harm it has caused Plaintiff and
20  other consumers "who rely on the representations about the Products". CAC ¶ 78. As
21  an initial note, "what is 'unfair' is a question of fact, which involves an equitable
22  weighing of all the circumstances." *See Perryman v. Litton Loan Servicing, LP*, 81 F.
23  Supp. 3d 893, 900 (N.D. Cal. 2015) (citation and internal quotation marks omitted);
24  *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1246 (N.D. Cal. 2017) ("[b]ecause this
25  determination is one of fact which requires a review of evidence from both parties,
26  courts are reluctant to grant motions to dismiss 'unfair' prong claims under this test.")
27  (citation and internal quotation marks omitted). As a full and developed factual record

28

1    has not yet been established, the Court should flatly decline to dismiss Plaintiff's

2    "unfair" claim under the UCL.

3       However, even at this early stage, Plaintiff's factual allegations demonstrate that

4    Defendant's conduct is "unfair." To determine if a representation is "unfair", courts in

5    the Ninth Circuit employ one of three tests. Under the balancing test, which is

6    commonly applied in consumer cases, Plaintiff's allegations are sufficient to establish

7    a violation of the UCL "unfair" prong. *See Dei Rossi v. Whirlpool Corp.*, No. 2:12-cv-

8    00125, 2013 U.S. Dist. LEXIS 153682, at *32 (E.D. Cal. Oct. 24, 2013) (holding that

9    "Plaintiffs have stated a UCL claim under the unfair practice prong" when alleging that

10   the defendant sold mislabeled consumer products, defendant's conduct provided no

11   benefits, and plaintiffs suffered an injury); *see also Dorfman v. Nutramax Labs., Inc.*,

12   No. 13cv0873 WQH (RBB), 2013 U.S. Dist. LEXIS 136949, at *38 (S.D. Cal. Sept.

13   23, 2013) (allegations regarding false and misleading claims on label "plausibly

14   suggest that Defendants engaged in an immoral, unethical, oppressive or unscrupulous

15   business practice that caused injury to consumers which outweighed its benefits.")

16   (internal citations omitted); *see also McKell v. Wash. Mut.*, Inc., 142 Cal. App. 4th

17   1457, 1473 (2006) (holding that a "business practice is unfair within the meaning of

18   the UCL if it violates established public policy or if it is immoral, unethical, oppressive

19   or unscrupulous and causes injury to consumers which outweighs its benefits.").

20   Because the CAC alleges that Defendant deceives consumers regarding the content of

21   its products and this conduct in no way benefits consumers, Plaintiff has established

22   "unfair" conduct under the UCL.

23       Under the alternative FTC test, the outcome remains the same as the harm to

24   consumers is substantial and is not outweighed by any potential benefit from

25   Defendant's labeling. *See  Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS

26   (BGS), 2018 U.S. Dist. LEXIS 37617, at *17-18 (S.D. Cal. Mar. 7, 2018) (holding that

27   plaintiffs met elements of FTC test when they alleged that class members would not

28

have purchased the product or would have paid less for it if the defendant disclosed the misrepresentation); *see* CAC ¶ 6. Defendant claims that, under the FTC test, Plaintiff "cannot allege an injury that he could have reasonably avoided." Motion at 13. However, a plaintiff could not have "reasonably avoided" an injury if he had no reasonable way of knowing the product was not sold as advertised. Here, Plaintiff alleged that he and members of the Classes did not know, and had no reason to know, that the representations were false, CAC ¶ 39, that Defendant's conduct was and continues to be of no benefit to consumers, *id.* at ¶ 78, and that the conduct was unfair and injurious to consumers. *Id.*

Defendant also argues that Plaintiff fails to state a claim under the public policy test because the CAC does not identify a policy based on a legal provision that Defendant violated. Motion at 13-14. However, when a plaintiff tethers his UCL claim to a violation of the CLRA or FAL, he or she can sufficiently allege a "unfair" UCL claim under the public policy test. *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1099 (N.D. Cal. 2014) (holding that, under the public policy test, plaintiff's "unfair" UCL prong "succeeds because it is tethered to the CLRA[.]"); *see also In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG (PLAx), 2014 U.S. Dist. LEXIS 149732, at *68 (C.D. Cal. Sept. 4, 2014) (holding that a plaintiff may tether his "unfair" UCL claim to the FAL and CLRA). Here, Plaintiff pleads causes of action under the CLRA and FAL, incorporated these allegations in his cause of action under the UCL, and explicitly tethered his UCL claim to the CLRA and FAL claim. CAC ¶¶ 60-70, 71, 75. For these reasons, Plaintiff has adequately established a violation of the "unfair" prong under the UCL.

### E.    Plaintiff States A Claim Under The UCL "Unlawful" Prong

As established above, Plaintiff adequately alleges a claim under the CLRA and FAL, both of which are predicate violations for his UCL "unlawful" claim. *MacDonald*, 37 F. Supp. 3d at 1097 ("[T]o state a claim under the unlawful prong of

the UCL, a plaintiff must sufficiently plead a predicate violation. It is well established that a CLRA violation suffices as the predicate."); *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002) ("With respect to the *unlawful* prong, '[v]irtually any state, federal or local law can serve as the predicate for an action' under section 17200.") (citation omitted). For this reason alone, his claim under the "unlawful" prong of the UCL survives.

Separately, Plaintiff also bases his UCL "unlawful" claim on Defendant's unlawful labeling practice in listing "Propellant" as an ingredient, rather than listing what Propellent is actually comprised of – propane and isobutane. Federal regulation requires that "[i]ngredients required to be declared on the label or labeling of a food . . . except those ingredients exempted by § 101.100, shall be listed by common or usual name . . . ." 21 C.F.R. § 101.4(a)(1). Since Section 101.100 does not exempt propane or isobutane, they should be listed by their common or usual name. CAC ¶ 28. Section 102.5 states that "[t]he common or usual name of a food . . . shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a). Further, if a food is "fabricated from two or more ingredients," its label is deemed misbranded unless it bears, "the common or usual name of *each* such ingredient."  21 U.S.C. § 343(i) (emphasis added).

According to Defendant's nonsensical approach, the most simple and direct terms as possible to describe propane and isobutane are not their actual names, but the undefined term "Propellant."  Motion at 15.  "Propellant" does not describe propane and isobutane in the most "simple and direct terms as possible," nor does it provide the food's "basic nature" and "characterizing properties or ingredients." 21 C.F.R. 102.5(a). If Defendant wanted to inform consumers of the Products' contents in the most simple and direct way possible, it would describe the ingredients by their basic names: propane and isobutane. By masking these two ingredients with one term,

Defendant obfuscates the Products' contents rather than providing consumers with the most accurate and simple terms as possible.

Defendant's arguments are also premature as whether use of the word "Propellant" to describe propane and isobutane is uniform among similar products and therefore "established by common usage" is a question of fact, not appropriate for this stage of the litigation.[7] *Jones v. Conagra Foods, Inc.*, 912 F. Supp. 2d 889, 897 n.2 (N.D. Cal. 2012). ("Whether 'propellants' is the common or usual name of the ingredient [in a cooking oil spray case] . . . is a factual dispute that can be addressed at a different stage in the proceedings."). For these reasons, Defendant's labeling practices in using the term "Propellant" violates the "unlawful" prong of the UCL.

Even if Defendant is in accordance with 21 C.F.R. §§ 101.4 and 102.5, Defendant violates 21 U.S.C. § 343(i), which establishes that labels for foods "fabricated from two or more ingredients," are deemed misbranded unless they bear "the common or usual name of ***each*** such ingredient." 21 U.S.C. § 343(i) (emphasis added). As established by the Code of Federal Regulation, propane and isobutane are ingredients used in food. *See* 21 C.F.R. § 184.1655(c) (describing propane as an "ingredient" that "is used in food"); 21 C.F.R. § 184.1165(c) (describing same for isobutane). Because "Propellant" is "fabricated from two or more ingredients", Defendant is required to provide the common name of *each* ingredient. 21 U.S.C. § 343(i). Because Defendant hides the true nature of these ingredients behind the term "Propellant", Defendant has violated 21 U.S.C. § 343(i) as well. Defendant does not contest such violation in its Motion and therefore waives any arguments in its Reply. *See generally* Motion; *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

Nonetheless, even if the Court finds that Defendant's labeling practices in regard

---

[7] Furthermore, as outlined in Plaintiff's Opposition to Defendant's Request for Judicial Notice (filed concurrently), the Court should not take judicial notice of the other spray products Defendant seeks to introduce.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  to "Propellant" does not violate the UCL, Defendant's violations of the CLRA and the

2  FAL sufficiently establish a violation of the UCL's "unlawful" prong.[8]

3  **F.     Plaintiff's Express Warranty Claim Survives**

4       To successfully plead a breach of express warranty claim under California law,

5  a plaintiff must prove that: (1) the seller's statements constitute an affirmation of fact

6  or promise or a description of the goods; (2) the statement was part of the basis of the

7  bargain; and (3) the warranty was breached. *See* Cal. Comm. Code § 2313(1); *Brown*

8  *v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 899-900 (N.D. Cal. 2012). Here,

9  Plaintiff has alleged that: 1) the 100% Oil representations are affirmations of fact or

10  promises that the Products contain only oil (CAC ¶ 93); 2) the representations became

11  the basis of the bargains for purchase as Plaintiff and other consumers relied on them

12  (CAC ¶¶ 93-94); and 3) the warranties were breached when Plaintiff and other

13  consumers did not receive Products which were entirely comprised of oil and therefore

14  did not obtain the full value of the Products as represented (CAC ¶¶ 95-96). Therefore,

15  Plaintiff has alleged a claim for breach of express warranty.

16       Defendant avers that Plaintiff's express warranty claim fails because Plaintiff

17  fails to acknowledge the "NO-STICK SPRAY" language on the bottle, making his

18  reading of the 100% Oil representations "incomplete and out of context." Motion at

19  17. This argument is unavailing for three reasons. First, as discussed above, just

20  because a Product is sold as a "NO-STICK SPRAY" in a can does not mean a

21  reasonable consumer would understand that the Product will contain propane,

22  isobutane, or other non-oil ingredients. Second, how a reasonable consumer is expected

23  to interpret the 100% Oil representations, specifically in light of other statements or

24  disclaimers, is a question of fact not appropriate for resolution at this stage. *See Fagan*,

25

26  ───────────────
[8] Defendant also contends that propane and isobutane are generally recognized as safe. Motion at 16.

27  However, Plaintiff does not allege that listing Propellant as an ingredient is unlawful because propane
and isobutane are unsafe. Defendant's red herring argument therefore has no bearing as to whether

28  the Products are unlawfully labeled under the UCL.

2014 U.S. Dist. LEXIS 2795, at *6. Finally, Defendant's reliance on Cal. Comm. Code § 10215 fails because Section 10215 states that warranties "must be construed as consistent with each other and as cumulative, *but if that construction is unreasonable*, the intention of the parties determines which warranty is dominant." Cal. Comm. Code § 10215 (emphasis added). Because "NO-STICK SPRAY" does not inform consumers that the Products contain ingredients in addition to oil, such a construction is unreasonable.

Defendant also argues that the 100% Oil representations are true and therefore cannot serve as a basis for an express warranty claim. But as discussed above, even if Defendant's strained interpretation of the representations is true in some sense, the representations are subject to Plaintiff's very plausible interpretation and therefore misleading. *Allred*, 2018 U.S. Dist. LEXIS 37617 at *19 (denying motion to dismiss express warranty claim when defendant argued that label was truthful). Furthermore, Plaintiff is not challenging the blend of oil in the Products. For these reasons, Plaintiff's express warranty claim is sufficiently alleged.

### G. Plaintiff's Implied Warranty Claim Survives

Plaintiff also alleges a cause of action under Cal. Comm. Code § 2314(2)(f) for breach of implied warranty. Defendant contends that Plaintiff's implied warranty claim fails because Plaintiff has not alleged vertical privity with Defendant. Motion at 18. This is incorrect. Plaintiff's claim falls squarely within two exceptions to the privity requirement. First, Plaintiff's claim is exempt from the privity requirement because he is an intended third-party beneficiary of the contract between Defendant and the retailer Albertson's to sell the Products. *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 145 Cal. Rptr. 448, 450 (Ct. App. 1978); *see also Michael v. Honest Co.*, No. LA CV15-07059 JAK (AGRx), 2016 U.S. Dist. LEXIS 189116, at *70-76 (C.D. Cal. Dec. 6, 2016) (holding that a plaintiff-consumer does not need to show vertical privity for an implied warranty claim when purchasing the product from a retailer because he is an

intended beneficiary of the warranties); *Clark v. LG Elecs. U.S.A., Inc*., No. 13-cv-485 JM (JMA), 2013 U.S. Dist. LEXIS 155179, at *32-37 (S.D. Cal. Oct. 29, 2013). Defendant cites to *Wolph* to argue that because Plaintiff purchased the Products from a retailer, he lacks vertical privity with Defendant to bring an implied warranty claim. Motion at 18. However, the court in *Wolph* did not consider the intended beneficiary exception. *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2009 U.S. Dist. LEXIS 83681, at *7-8 (N.D. Cal. Sept. 14, 2009). Indeed, multiple courts have found this exception applicable in consumer cases.[9]

Second, Plaintiff's claim falls within an additional exception to the privity requirement, as "California courts have recognized an exception to the privity requirement in cases involving foodstuff 'where it is held that an implied warranty of fitness for human consumption runs from the manufacturer to the ultimate consumer regardless of privity of contract.'" *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1159 (S.D. Cal. 2015) (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954)); *see also Hammock v. Nutramarks, Inc.*, No. 15cv2056 BTM (NLS), 2016 U.S. Dist. LEXIS 124240, at *13 (S.D. Cal. Sept. 12, 2016) (same). Here, the Product as issue is primarily olive and canola oil. Accordingly, Plaintiff need not establish vertical privity to plead his implied warranty claim.

## H. Defendant's Request To Strike The Nationwide Allegations Is Procedurally Premature

Defendant requests that this Court also strike Plaintiff's claims for express and

---

[9] *See Roberts v. Electrolux Home Prods., Inc.*, No. CV 12-1644 CAS (VBKx), 2013 U.S. Dist. LEXIS 185488, at *30 (C.D. Cal. Mar. 4, 2013) ("[A]n exception to the privity requirement [] applies when a plaintiff is the intended beneficiary of implied warranties in agreements linking a retailer and a manufacturer[.]"); *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148-DOC (MANx), 2014 U.S. Dist. LEXIS 185202, at *29 (C.D. Cal. Dec. 29, 2014)  ("[V]ertical contractual privity is not needed to assert a claim for breach of implied warranty when plaintiff is a third-party beneficiary of a contract between other parties which does create an implied warranty.")

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

implied warranty brought on behalf of the nationwide class.[10] Motion at 19. However, a request to strike or dismiss a plaintiff's nationwide class allegations is inappropriate at this stage in the litigation. The principal case Defendant relies on in support of its request, *Mazza*, is a case in which the court had undertaken a choice-of-law analysis ***at the class certification stage***, rather than the pleading stage. *Mazza v. Am. Honda Motor Co.*, 666 F3d 581, 585 (9th Cir. 2012). Furthermore, post-*Mazza* authority in this jurisdiction has deferred any choice of law analysis until after the pleading stage, after a factual record has been developed. *See, e.g.*, *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013) ("Such a detailed choice-of-law analysis is not appropriate at [the motion for judgment on the pleadings] stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) ("Until the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case."); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178, at *51-56 (N.D. Cal. Oct. 2, 2013) (declining to evaluate how choice-of-law affects plaintiff's claims at the pleading stage); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) (same). "A detailed choice of law analysis is a fact-heavy analysis" and "the Court has no factual record to use in deciding which state has a greater interest in applying its laws." *Gerstle v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2017 U.S. Dist. LEXIS 100580, at *13 (N.D. Cal. June 28, 2017). For this reason, the Court should deny Defendant's request to strike the express and implied warranty nationwide class allegations as

---

[10] Although Plaintiff has also alleged nationwide claims for common law fraud, intentional misrepresentation, negligent misrepresentation, and unjust enrichment (*see generally* CAC), Defendant does not request that those nationwide claims be stricken. Nor does Defendant provide any differences in state laws for these causes of action that would be material to this action. To the extent Defendant attempts to make such arguments for the first time in its Reply, those arguments are improper and should be stricken. *See Zamani*, 491 F.3d at 997 ("The district court need not consider arguments raised for the first time in a reply brief.").

1    premature.

2        **I.**    **Plaintiff's Nationwide Allegations Are Meritorious**

3        Even if the Court were to perform a choice of law analysis at this stage,

4    Defendant has not met its burden under the California governmental interest test.

5    *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 539-40 (C.D. Cal. 2011)

6    ("Defendant has the burden of showing that there is an actual conflict between

7    California and other law[,]" including "to convince this Court of 'material' differences

8    in the law, as shown 'on the facts of this case.'") (internal citations omitted). As the

9    court in *Mazza* recognized, the first element in California's choice-of-law analysis is

10   met only "if differences in state law are material, that is, if they make a difference in

11   this litigation." *Mazza*, 666 F.3d at 590 (citing *Washington Mutual*, 24 Cal. 4th at 919-

12   20). Despite being required to do so, Defendant has failed to specifically demonstrate

13   that any of the purported differences in state express and implied warranty laws are

14   ***material to this case***. *Forcellati*, 876 F. Supp. 2d at 1161 (refusing to dismiss out-of-

15   state plaintiff's claims under California choice-of-law analysis when defendants did

16   not address whether any state law differences were material based on the facts and

17   circumstances ***of that case***); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d at 1237

18   ("[U]nlike the defendant in *Mazza*, [defendant] has not explained how differences in

19   the various states' consumer protection laws would materially affect ***the adjudication***

20   ***of Plaintiffs' claims***[.]") (emphasis added). For the foregoing reason, Defendant's

21   request to strike should be denied.

22       To the extent Defendant seeks to demonstrate such material differences in its

23   Reply brief, the Court should still not consider such arguments as they were not

24   addressed in Defendant's opening brief and further, are premature prior to class

25   certification. *See Maynard v. Bonta*, No. CV 02-06539 MMM (CTx), 2002 U.S. Dist.

26   LEXIS 26728, at *52 n.72 (C.D. Cal. Nov. 18, 2002) (declining to consider new

27   arguments "raise[d] . . . for the first time in reply" as they are generally improper).

28

**J.      Plaintiff's Claims Are Pleaded in Compliance with Rule 9(b)**

To plead a fraud-based claim, a plaintiff must provide "the who, what, when, where, and how" of the misconduct.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Defendant takes issue with the "how" of the allegations, arguing that "Plaintiff does not adequately allege how the 100% statements are false, in particular because he never alleges that the oil is not 100% of the advertised oil and the allegations in the Complaint, including the ingredient list, demonstrate that the representation is true."  Motion at 22. This argument fails on multiple grounds. First, Plaintiff does not allege that the Products contain multiple types of oil. As previously stated, Plaintiff only takes issue with Defendant labeling of the Products as containing *solely* oil as an ingredient, despite containing additional ingredients. In this regard, Plaintiff has pled sufficient facts in his Complaint. CAC ¶¶ 14-21. As argued in Section IV.A.1, Plaintiff has outlined how and why the 100% Oil representations are false and misleading.

**K.      Plaintiff's      Intentional      Misrepresentations      and      Negligent Misrepresentations Claims Are Adequately Pleaded**

Defendant argues that Plaintiff's negligent and intentional misrepresentation claims fail because "Defendant disclosed the truth about the ingredients in the products on the products' packaging," and Plaintiff could therefore not have justifiably believed the Product's representations.  Motion at 23-24. However, that argument has been explicitly rejected by *Williams* and its progeny. *Williams*, 552 F.3d at 939; *Reid*, 780 F.3d at 958-59. Plaintiff is not required to verify Defendant's misrepresentations on the front label with the ingredient list on the back label. Further, nowhere does Plaintiff allege that he reviewed the ingredient list ***before*** purchasing the product. *See generally* CAC. Rather, the CAC only alleges the content of the Products' ingredient list to demonstrate that Defendant's representations on the Products' front label are false and misleading.

Defendant also contends that Plaintiff has not established that Defendant "acted with the requisite fraudulent intent to deceive or lacked reasonable grounds to believe the representations were true…" Motion at 23. However, Plaintiff has alleged that as the entity responsible for the formulating, manufacturing, labeling and marketing of the Products, Defendant knew the 100% Oil representation was false and misleading but sold the Products anyways, "intend[ing] that Plaintiff and other consumers rely on the presentation made about the Products" and Plaintiff lost money as a result.  CAC ¶¶ 12; 40; 117-20;[11] *see also Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS/TWD), 2016 U.S. Dist. LEXIS 14000, at *46 (N.D.N.Y. Jan. 12, 2016) (holding that plaintiff has stated a claim for intentional misrepresentation when he "plausibly alleges intent: Defendant knowingly made these false representations"); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 472 (E.D.N.Y. 2013) (finding that plaintiffs adequately plead an intentional misrepresentation claim when defendants made materially false representations in "promot[ing] products as having qualities they did not in fact possess[.]").

### L.    Plaintiff Has Adequately Alleged A Claim For Unjust Enrichment

Defendant admits that the Court may construe Plaintiff's cause of action for unjust enrichment as a quasi-contract claim seeking restitution. Motion at 24 (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). Defendant argues that the claim nonetheless fails because Plaintiff has received the benefit of the bargain as the Products contain 100% of the advertised oil. *Id.* But as outlined in this brief, the 100% Oil representations, which Plaintiff and other consumers relied on, are false and misleading. Plaintiff and other consumers have conferred a benefit on Defendant by purchasing the Products. CAC ¶ 134. In return, Plaintiff and other

---

[11] Although Plaintiff alleges that Defendant's misrepresentation was made with intent to defraud, he also alleges that at the very least, "Defendant has no reasonable grounds for believing its representation was not false and misleading." CAC ¶ 127. To this extent, Plaintiff has adequately pleaded the requisite scienter for a negligent misrepresentation claim.

1  consumers have not received the full value of the benefit conferred on Defendant.  *Id.*

2  at ¶ 135. Therefore, Plaintiff has adequately alleged a quasi-contract cause of action.

3  Defendant additionally argues that Plaintiff's quasi-contract claim seeking

4  restitution fails because it is duplicative of his express warranty, UCL, CLRA, and FAL

5  claims. Motion at 24-25. But Ninth Circuit precedent and subsequent authority in this

6  circuit have rejected Defendant's argument. In *Astiana*, the Ninth Circuit rejected the

7  duplicity argument advanced here, holding that a plaintiff may plead both a cause of

8  action for unjust enrichment and restitution. *Astiana*, 783 F.3d at 762; *see also*

9  *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 989 (N.D. Cal. 2016) (rejecting

10  duplicity argument as "no longer viable at the motion to dismiss stage in this Circuit"

11  pursuant to *Astiana*); *Broomfield*, 2017 U.S. Dist. LEXIS 142572, at *40-43 (sustaining

12  quasi-contract cause of action when plaintiffs alleged that defendant was unjustly

13  enriched through misleading representations which induced consumers to pay).

14  Further, under Fed. R. Civ. P. 8(a)(3), Plaintiff is entitled to "include relief in the

15  alternative or different types of relief."

16  For the foregoing reasons, the Court should deny Defendant's motion to dismiss

17  Plaintiff's unjust enrichment claim.

18  **V.   CONCLUSION**

19  For the foregoing reasons, Plaintiff respectfully requests that this Court deny

20  Defendant's Motion in its entirety.

21  Dated: April 18, 2018                    **FARUQI & FARUQI, LLP**

22                                           By: */s/ Benjamin Heikali*
23                                           Benjamin Heikali (SBN 307466)
                                             Joshua Nassir (SBN 318344)
24                                           10866 Wilshire Blvd., Suite 1470
                                             Los Angeles, CA 90024
25                                           Telephone: 424.256.2884
                                             Fax: 424.256.2885
26                                           E-mail: bheikali@faruqilaw.com
                                                     jnassir@faruqilaw.com
27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS